IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Robert M. Pierce, Jr., | ) | C/A No.: 0:13-3601-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Office Depot, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this employment discrimination case, Robert M. Pierce, Jr. ("Plaintiff") is suing his former employer, Office Depot ("Defendant"). In his amended complaint, Plaintiff alleges (1) violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), (2) breach of employment contract/wrongful discharge, and (3) breach of contract accompanied by a fraudulent act. [Entry #20 at 1, 7–13]. Plaintiff seeks lost wages, actual, liquidated, and punitive damages, attorneys' fees, and costs. *Id.* at ¶ 66.

This matter comes before the court on Defendant's partial motion to dismiss filed on April 8, 2014, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). [Entry #23]. Defendant seeks dismissal of the portions of Plaintiff's ADEA claim concerning alleged adverse employment actions in January 2010 and November 2011, arguing that they are time-barred. Defendant also seeks dismissal of both claims for breach of contract, alleging they fail to state a claim as a matter of law. The motion having been fully briefed [Entry #25, #26], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion to dismiss is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant Defendant's motion.

I.     Factual and Procedural Background

Plaintiff alleges he began his employment with Defendant in 1998 and was terminated on August 3, 2012. [Entry #20 at ¶ 10]. He states that he was involuntarily assigned to a new territory in January 2010 ("2010 Reassignment"), *id.* at ¶ 12, which he claims was an unfavorable territory that had consistently underperformed, *id.* at ¶ 43.

In November 2011, Plaintiff failed to be promoted to the District Manager position for which he had applied ("November 2011 Failure to Promote"). *Id.* at ¶¶ 19–20.

In May 2012, Defendant issued Plaintiff a letter of concern that indicated his sales numbers were not within expectations. *Id.* at ¶ 23.

In June 2012, Plaintiff learned he failed to be promoted to the Vertical Markets Development Manager (VMDM) position for which he had applied ("June 2012 Failure to Promote"). *Id.* at ¶¶ 24–25.

On July 3, 2012, Plaintiff received a Performance Improvement Process Memorandum ("PIP") dated July 2, 2012, to help him meet Defendant's performance expectations. *Id.* at ¶ 29; PIP filed as Entry #20-4. Plaintiff claims the PIP altered his at-will status because "the improvement plan is a 60-day process." [Entry #20 at ¶¶ 30–33].

On August 3, 2012, Plaintiff was terminated. *Id.* at ¶ 34. Plaintiff claims he was terminated in violation of the PIP because he was not allowed the full 60 days to complete the PIP. *Id.* Defendant's reason for discharging Plaintiff was "lack of performance," *id.* at ¶ 35, but Plaintiff claims the given reason was false and is pretext for age discrimination, *id.* at ¶¶ 35–36.

After his termination, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on April 23, 2013, alleging age discrimination from the earliest date of November 2011 and latest date of August 3, 2012. [Entry #20-2]. Plaintiff did not check the box for "Continuing Action." In the charge, Plaintiff complained of having been denied promotions in November 2011 and June 2012, and of being terminated in August 2012. *Id.* On September 30, 2013, the EEOC issued a Dismissal and Notice of Rights ("Dismissal"). [Entry #20-3 at 1]. Plaintiff timely filed this action on December 27, 2013. [Entry #1]. In his amended complaint, Plaintiff alleges that the following actions constituted adverse employment actions: (1) 2010 Reassignment, (2) November 2011 Failure to Promote, (3) June 2012 Failure to Promote; and (4) August 2012 Termination. [Entry #20 at ¶¶ 43, 46, 48, and 50].

II.     Discussion

     A.     Standard of Review

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(1) where the court lacks subject-matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(1) examines

whether a complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A motion to dismiss under Rule 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 244. Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

Although Defendant asserts that the motion is brought pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), its untimeliness argument "is not an argument challenging the district court's subject matter jurisdiction to hear the claim." *Laber v. Harvey,* 438 F.3d 404, 429 n. 25 (4th Cir. 2006). Therefore, this argument is properly reviewed under Rule 12(b)(6) rather than Rule 12(b)(1). *See Anderson v. McHugh*, C/A No. 3:10-2137, 2011 WL 2731211, at *1 (D.S.C. April 22, 2011).

"In the employment context, a court may consider an EEOC charge and other EEOC documentation [when considering a motion to dismiss] because such documents are integral to the complaint as Plaintiff necessarily relies on these documents to satisfy the time limit requirements of the statutory scheme." *Williams v. 1199 Seiu United Healthcare Workers East,* C/A No. 12-72, 2012 WL 2923164 at * 1 n. 1 (D.Md. July 17, 2012) (citing *Holowecki v. Fed. Express Corp.,* 440 F.3d 558, 565–566 (2d Cir. 2006); *McDougall v. Maryland Transit Auth.,* C/A No. 11-3400, 2012 WL 1554924 at n. 3 (D.Md. Apr. 27, 2012) ["a plaintiff's administrative discrimination charge is integral to a subsequent discrimination complaint."]). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers,* 762 F.2d 30, 31 (4th Cir. 1985).

 B. Analysis

  1. Time-Barred ADEA Claims

Defendant contends that Plaintiff's ADEA claims concerning the 2010 Reassignment and November 2011 Failure to Promote must be dismissed as time-barred because Plaintiff did not file his EEOC charge until more than 300 days after both events. Further, Defendant argues that Plaintiff failed to mention the 2010 Reassignment in the EEOC charge. Defendant argues that Plaintiff's claims regarding these alleged adverse employment actions are time-barred as a matter of law, and Plaintiff's first cause of action should be limited to the June 2012 Failure to Promote and August 2012 Termination.

A plaintiff must satisfy Title VII's charge-filing requirement before asserting a judicial claim for relief in court. The statute requires that a charge of discrimination "shall be filed within one hundred eighty days [or within three hundred days in a deferral state like South Carolina] after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The Supreme Court has consistently rejected pleas for judicial relaxation of the time limits prescribed by Title VII for filing charges, insisting that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *accord*, *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147 (1984); *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980).

Plaintiff argues that the alleged adverse employment actions that occurred in January 2010 and November 2011 were insufficient to place him or a reasonable person on notice of the discriminatory nature of Defendant's conduct prior to the June 2012 Failure to Promote. [Entry # 20 at ¶¶ 42–47]. Plaintiff cites to a single case out of the Eastern District of Virginia to argue a "continuing violation" theory that Defendant discriminated against him on the basis of his age. To salvage his otherwise time-barred claims, Plaintiff cites to *Burke v. AT&T Technical Servs. Co., Inc.*, 55 F. Supp. 2d 432 (E.D. Va. 1999) for its three-prong test that requires: (1) an improper, discriminatory act occurred within the limitations period; (2) this violation was in some way connected with the discriminatory acts occurring outside the limitations period; and (3) a reasonably prudent person would not have recognized the discriminatory nature of the acts occurring

outside the limitations period until the occurrence of the acts within the limitations period. *Id.* at 438–39.

Although Plaintiff urges the court to apply the *Burke* test, he fails to demonstrate that his pleadings meet the test. Specifically, Plaintiff fails to demonstrate that the facts support his allegation that the June 2012 Failure to Promote and August 2012 Termination are connected with the January 2010 Reassignment and November 2011 Failure to Promote and that a reasonably prudent person would not have recognized the alleged discriminatory nature of the earlier events.

As an initial matter, Plaintiff's EEOC charge did not check the box for "Continuing Action." As the *Burke* court noted, "the Fourth Circuit has not explicitly adopted a test for what constitutes a continuing violation in the context of employment discrimination." *Id.* at 438. The *Burke* court further stated: "Left unresolved by the Fourth Circuit is the appropriate manner for distinguishing between separate and complete acts of discrimination that may not form the basis for a continuing violations charge and acts of discrimination that would not be apparent to a reasonably prudent person, which may be included in a continuing violations charge when later incidents serve to reveal the discriminatory nature of the acts." *Id*. As noted by Defendant, however, in *Talbot v. Mobil Corporation et al.*, a case cited in *Burke*, the same district court cautioned that any future continuing violations test was likely to have narrow application:

> Although [the Fourth] circuit has yet to adopt a definitive test to distinguish between continuing violations and multiple discrete actions, unpublished opinions forecast the adoption of a test that construes continuing violations narrowly.

. . .

> Indeed, the statutory scheme's relatively short limitations periods are designed to ensure that acts of discrimination are promptly reported and remedied. And courts do violence to this design when they construe expansively the judicially-created doctrine of continuing violations. In summary, where, as here, the alleged continuing violation consists of separate and distinct acts, each of which could reasonably have been made the subject of a lawsuit at the time it occurred, the allegation of a continuing practice of discrimination is insufficient to save the actions outside the statute of limitations period from the statutory bar.

*Talbot v. Mobil Corp.*, 46 F. Supp. 2d 468, 471–72 (E.D. Va. 1999) (granting motion to dismiss as to untimely claims).

Further, in the later case of *Morgan*, the Supreme Court explained that "[a] discrete . . . discriminatory act 'occurred' on the day it 'happened.' A party, therefore, must file a charge [with the EEOC] within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Morgan*, 536 U.S. at 110. *Morgan* identifies "acts such as termination, failure to promote, denial of transfer, or refusal to hire" as "[d]iscrete acts" which must be made the subject of a timely-filed charge to be actionable. Discrete acts of employment discrimination that are not made the subject of a timely-filed charge are time-barred and, as such, "no longer actionable," even when they are related to acts that are not time-barred. *Id.* at 113–15. The Court stated "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred." *Id.* at 113.

The 2010 Reassignment and November 2011 Failure to Promote are each a discrete discriminatory act within the meaning of *Morgan*. Therefore, under *Morgan* and

*Ricks*, a plaintiff complaining of discrimination in a deferral state like South Carolina must file his charge of discrimination within 300 days of the date the action occurred. Because it is undisputed that Defendant reassigned Plaintiff to the new territory in January 2010 and his failure to promote occurred in November 2011, Plaintiff's charge of discrimination in April 2013 was untimely as to each claim. Further, Plaintiff's charge itself noted that the earliest date of discrimination was November 2011, such that the January 2010 act was not contained or complained of in the charge. Accordingly, the undersigned recommends that the court dismiss Plaintiff's age discrimination claims concerning the 2010 Reassignment and November 2011 Failure to Promote.  This recommendation does not impact Plaintiff's age discrimination claims concerning the June 2012 Failure to Promote and August 2012 Termination.

2.     Breach of employment contract/wrongful discharge

Defendant seeks dismissal of Plaintiff's second cause of action for breach of employment contract/wrongful discharge. The amended complaint alleges that Defendant "modified Plaintiff's at-will status by executing the PIP, together with Plaintiff, and agreeing in writing to a specified, mandatory period of 60 days wherein Defendant would work with Plaintiff and allow Plaintiff to implement a plan to increase his performance." [Entry #20 at ¶ 59]. Plaintiff alleges that Defendant, "acting in bad faith, failed to follow the mandatory language of the PIP and breached the terms of its employment agreement with Plaintiff by failing to allow Plaintiff to implement the improvement plan, failing to meet with Plaintiff, terminating the Plaintiff prior to the 60 days provided in the PIP

without any good faith belief that grounds for termination under the PIP existed, and by otherwise acting in bad faith." *Id.* at ¶ 61.

Under South Carolina law, there is a presumption that employees are at-will. *Prescott v. Farmer's Tel. Co-Op., Inc.*, 516 S.E.2d 923, 925 (S.C. 1999) ("Although some exceptions have been recognized, the doctrine of employment at-will remains in South Carolina as a longstanding economic incentive that provides the marketplace its necessary flexibility."). Nevertheless, "an employer and employee may contractually alter the general rule of employment at-will, thereby restricting the freedom of either party to terminate the employment relationship without incurring liability." *Baril v. Aiken Reg'l Med. Ctr.,* 573 S.E.2d 830, 836 (S.C. Ct. App. 2002). To survive a Rule 12(b)(6) motion to dismiss on a claim for breach of a contract of employment, "a plaintiff 'must plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .'" *Perrine v. G4S Secure Solutions (USA), Inc.*, C.A. No. 2:11-1210-RMG, 2011 WL 3563110, at *2 (D.S.C. Aug. 9, 2011) (quoting *Amason v. P.K. Mgmt., LLC*, C.A. No. 10-1752-JFA, 2011 WL 1100169, at *6 (D.S.C. March 23, 2011)). "[G]eneral and conclusory allegations are not sufficient to establish the existence of an employment contract." *Nicholson v. Science Applications Int'l Corp.*, C.A. No. 2:12-2779-PMD-BM, 2012 WL 6568399, at *2 (D.S.C. Nov. 27, 2012) (citing *Perrine*, 2011 WL 3563110, at *2).

The material elements of every contract are an "offer, acceptance, and valuable consideration." *Roberts v. Gaskins*, 486 S.E.2d 771, 773 (S.C. Ct. App. 1997). In the employment context, "[f]or a contract to be created, the employee must be aware of

10

promises . . . , must have relied on (and continued work in reliance on) those promises, and the promises must restrict the right to discharge." *Lawrence v. Westinghouse Savannah River Co., Inc.*, C.A. No. 1:03-484-27, 2005 WL 3968031, at \*14 (D.S.C. March 31, 2005); *see also Storms v. Goodyear Tire & Rubber Co.*, 775 F. Supp. 862, 867 (D.S.C. 1991) (finding language in the agreement insufficient to form a contract when it is "not couched in mandatory terms and does not contain language that specifically limits the employer's right to demote or terminate [plaintiff] without cause.").

A review of the PIP does not support Plaintiff's allegations that it altered Plaintiff's at-will employment.  Although Plaintiff alleges the PIP "mandated a 60-day performance improvement plan" and "guaranteed Plaintiff sixty (60) days of employment to improve performance," the PIP contains no such guarantees.  In fact, the first page of the PIP provides the exact opposite: "Designation of a PIP period is not a guarantee of employment for the specified period of time." [Entry #20-4 at 1]. "South Carolina follows an objective contract interpretation rule, meaning that if the language of a contract "is perfectly plain and capable of legal construction, such language determines the force and effect of the instrument.'" *Catawba Indian Tribe of S.C. v. City of Rock Hill*, 501 F.3d 368, 372 (4th Cir. 2007) (quoting *Blakeley v. Rabon,* 221 S.E.2d 767, 769 (S.C. 1976)).  "Words cannot be read into a contract which impart intent wholly unexpressed when the contract was executed." *Id.*  The undersigned's plain reading of the language on the first page of the PIP reflects that the designation of a 60-day PIP period is not a guarantee of employment for those 60 days.  Any other interpretation of this language is strained and inconsistent with South Carolina's plain construction rule.

Further, the specific terms of the PIP plainly advise of the possibility of termination prior to the expiration of the 60-day period:

> This Performance Improvement Process (PIP) Memorandum is *typically* a 60-day improvement plan that outlines performance issues. Generally, before using this document, performance issues should be addressed through setting performance expectations and providing coaching and feedback. If these methods have not been successful, the PIP is typically used to address multi-faceted performance or competency issues. This Memorandum outlines performance and behavioral competency issues which must be improved. Once this Memorandum is presented to the Associate, the Associate must complete the Action Plan on the reverse side of this form to Management's expectations by the date indicated below. If the Action Plan is not timely completed, the Action Plan steps are not timely implemented, other issues arise during the PIP period, or performance is not improved to Company standards by the end of the process, *termination of employment may result. If performance declines during the PIP period or is not sustained after successful completion of the PIP period, termination of employment may result.*
>
> . . .
>
> We will meet again on or around August 2nd, 2012 to discuss your progress. At the end of 30 days, we will review your overall results. *If your performance has not improved to meet the expected results above in the next 30 days, further disciplinary action, up to and including termination of your employment will occur.*

Entry # 20-4 at 1–2 (emphasis added).

Because the PIP does not allege a definite term of employment, does not identify mandatory language, and does not restrict Defendant's right to discharge Plaintiff without cause at any time, Plaintiff's employment is presumptively terminable at will. *See Cape v. Greenville County Sch. Dist.*, 618 S.E.2d 881, 883 (S.C. 2005). "The termination of an at-will employee normally does not give rise to a cause of action for breach of contract." *See Prescott v. Farmers Tel. Coop., Inc.*, 516 S.E.2d 923, 925 (S.C. 1999). Plaintiff fails to overcome the presumption of at-will employment because he did not plead the material

elements of the purported employment contract upon which he is suing, as required by South Carolina law. *See Nicholson v. Sci. Applications Int'l Corp.*, C/A No. 2:12-2779-PMD-BM, 2012 WL 6568399, at *2 (D.S.C. Nov. 27, 2012), *R & R adopted by* 2012 WL 6588635 (D.S.C. Dec.17, 2012) (citing *Perrine,* 2011 WL 3563110, at *2) (granting Rule 12(b)(6) motion to dismiss plaintiff's breach of contract claim where the complaint "alleged in very general and conclusory terms that [the plaintiff] 'entered into a contract' with the defendant, executed various documents which constituted a contract of employment, and that the defendant had an Employee Handbook which used 'mandatory language creating a contractual agreement.' Such general and conclusory allegations are not sufficient to establish the existence of an employment contract.").

Independently, Plaintiff has not established any separate consideration to support the PIP as an employment contract. *See Poole v. Incentives Unlimited, Inc.,* 548 S.E.2d 207, 208 (2001) (holding that when a covenant is entered into after the inception of employment, separate consideration, in addition to continued employment, is necessary in order for the covenant to be enforceable).

Even if Plaintiff were to overcome the presumption of at-will employment, his amended complaint does not identify any specific term of PIP that Defendant allegedly breached. Plaintiff alleges that Defendant "failed to follow the mandatory language of the PIP and breached the terms of its employment agreement with Plaintiff by failing to allow Plaintiff to implement the improvement plan, failing to meet with Plaintiff, terminating the Plaintiff prior to the 60 days provided in the PIP without any good faith belief that grounds for termination under the PIP existed, and by otherwise acting in bad

faith." [Entry #20 at ¶ 61]. As in *Nicholson*, this conclusory allegation is insufficient to survive a 12(b)(6) motion. Plaintiff's general and conclusory allegations are insufficient to set forth a plausible claim that a contract of employment existed between the parties or that Defendant breached such contract. *See Iqbal*, 556 U.S. at 678 ("[A] complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'") (quoting *Twombly*, 550 U.S. at 557).

The PIP contains no promises to Plaintiff, contains no mandatory terms, and does not contain language that specifically limits Defendant's right to terminate or discharge Plaintiff. For all these reasons, the undersigned recommends the court grant Defendant's motion to dismiss Plaintiff's breach of contract/wrongful discharge claim.

### 3.    Breach of contract accompanied by a fraudulent act

Defendant seeks dismissal of Plaintiff's third cause of action for breach of employment contract accompanied by fraudulent act. This claim also relates to the PIP, and in his amended complaint, Plaintiff alleges that Defendant's basis for terminating him was a pretext and that Defendant dealt unfairly with him when it failed to cooperate with him or allow him the time required under the PIP to improve his performance further. [Entry #20 at ¶ 65]. Plaintiff alleges that "Defendant, in the course of breaching the PIP, provided a dishonest, pretextual basis for Plaintiffs discharge and terminated him prematurely and without cause." *Id.* Plaintiff does not allege any specific facts in support of these allegations.

To establish a claim of breach of contract accompanied by a fraudulent act, Plaintiff "must show: (1) a breach of contract; (2) fraudulent intent relating to the

breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach." *D.R. Horton, Inc. v. Wescott Land Co.*, 730 S.E.2d 340, 354 (S.C. Ct. App. 2012) (citation omitted). A "fraudulent" act is "broadly defined as any act characterized by dishonesty in fact or unfair dealing." *Id.* Further, the "fraudulent act may be prior to, contemporaneous with, or subsequent to the breach of contract, but it must be connected with the breach itself and cannot be too remote in either time or character." *Id.* "Breach of contract accompanied by a fraudulent act is not simply a combination of a claim for breach of contract and a claim for fraud." *Ball v. Canadian Am. Express Co.*, 442 S.E.2d 620, 622–623 (S.C. Ct. App. 1994). The action for breach of contract accompanied by a fraudulent act is not based on the same elements as an action for fraud or deceit.[1] *Harper v. Ethridge*, 348 S.E.2d 374 (S.C. Ct. App. 1986). "Breach of contract accompanied by a fraudulent act is different. It requires proof of fraudulent intent relating to the breaching of the contract and not merely to its making." *Ball*, 442 S.E.2d at 623 (citing *Harper*).

Because the undersigned has already found in the preceding section addressing Plaintiff's second cause of action for breach of contract that Plaintiff has failed to establish a contract that changed his at-will employment, Plaintiff's third cause of action for breach of contract accompanied by a fraudulent act necessarily fails. Further, Plaintiff has failed to allege any facts to demonstrate any fraudulent intent by Defendant.

---

[1] A claim of fraud goes to the making of the contract. *See, e.g., Darby v. Waterboggan of Myrtle Beach, Inc.*, 344 S.E.2d 153 (S.C. Ct. App. 1986). It is based on the theory that an innocent party was induced to enter a contract he would not otherwise have made because he relied on a false representation by the fraudulent party. *Id.*

Therefore, the undersigned recommends the court grant Defendant's motion to dismiss Plaintiff's breach of contract accompanied by a fraudulent act.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the court grant Defendant's partial motion to dismiss [Entry #23] as to Plaintiff's age discrimination claims concerning the 2010 Reassignment and November 2011 Failure to Promote. The undersigned further recommends that the court grant Defendant's motion to dismiss Plaintiff's claims for breach of employment contract/wrongful discharge and breach of contract accompanied by a fraudulent act. If the court accepts this recommendation, the only remaining claims would be Plaintiff's age discrimination claims concerning the June 2012 Failure to Promote and August 2012 Termination.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

August 21, 2014                                 Shiva V. Hodges
Columbia, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).